IN THE UNITED STATES DISTRICT COURT

FOR THE   MIDDLE   DISTRICT OF ALABAMA

NORTHERN DIVISION

RECEIVED

2007 JAN 10  P 2: 08

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| In re James L. Knowles, Jr. | : |
| (Fed. Reg. No.: 73206-011), | : |
| PETITIONER, | : |
| | : |
| | : |
| vs. | : |
| | : Civil No.: 2:07CV37-MEF |
| | : |
| Federal Bureau of Prisons, | : |
| | : |
| Clay Shell, Assistant Administrator, | : |
| Central Inmate Monitoring Section, | : |
| | : FILED UNDER SEAL |
| Jeff Woodworth, National Witness | : |
| Security Coordinator, | : |
| | : |
| and | : |
| | : |
| Barbara Rickard, Unit Manager, | : |
| RESPONDENTS. | : |
| | : |

EMERGENCY PETITION FOR WRIT OF MANDAMUS

COMES NOW James L. Knowles, Jr., Petitioner in the above-styled matter, pursuant to 28 U.S.C. §1651, and hereby moves this Court to issue a writ of mandamus to compel the Respondents so-named herein to perform a specific duty which is statutorily owed to Petitioner.  In support of this petition, Petitioner would respectfully submit and demonstrate the following:


**May It Please The Court:**

## I.

### JURISDICTION

Petitioner hereby invokes jurisdiction for this, the United States District Court for the  Middle  District of Alabama, under Title 28 of the United Sattes Code, Section 1651, as the specific subject matter involves Respondents' deliberate interference with a process that affects matters concerned within the Middle District of Alabama at Montgomery, Alabama.

## II.

### STATEMENT OF THE CASE

This case involves Respondents' direct and deliberate interference with Petitioner's right to seek halfway house placement under 18 U.S.C. §3624(c).  Namely, Respondents are withholding Petitioner's referral for placement within a Community Corrections Center ("CCC"), which prevents the respective Community Corrections Manager from reviewing Petitioner's file and making the decision on Petitioner's CCC placement within the Middle District of Alabama at Montgomery, Alabama.

## III.

### PARTIES TO THIS PETITION

The parties to this emergency petition, and their known mailing addresses and places of business, as well as their respective capacities to be party to this matter, are as follows:

## A. The Petitioner:

Petitioner herein is James L. Knowles, Jr.  Petitioner is currently incarcerated within the federal penal system and is housed by the Federal Bureau of Prisons within a specially designed witness security facility located as an adjunct to the Federal Correctional Institution located at Marianna, Florida.  Petitioner claims a right to seek redress before this Court under the First and Fifth Amendments to the United States Constitution.  All items intended to be served upon Petitioner in this matter should be addressed to Petitioner in the following manner:

> James L. Knowles, Jr.
> (Fed. Reg. No.: 73206-011)
> Post Office Box 8000
> Marianna, FL 32447-8000.

## B. Respondent Federal Bureau of Prisons:

The Federal Bureau of Prisons, an agency of the United States Department of Justice, is statutorily mandated under 18 U.S.C. §3624(c), to consider Petitioner for pre-release custody.  The Federal Bureau of Prisons has failed to uphold its statutory obligation by the acts and actions of its employees and agents in deliberately refusing to process the necessary paperwork for submission to the respective Community Corrections Manager (which is the deciding authority for pre-release placement).  The Agency Federal Bureau of Prisons is a proper respondent in this matter. To Petitioner's knowledge the Federal Bureau of Prisons should

- 3 -

be served in the following manner:

> Office of the Director
> ATTN: General Counsel
> United States Department of Justice
> Federal Bureau of Prisons
> 320 First Street, N.W.
> Washington, DC 20534.

## C. Respondent Clay Shell:

Mr. Clay Shell is employed as the Assistant Administrator of the Central Inmate Monitoring Section of the Federal Bureau of Prisons.  Mr. Shell personally participated in the conspiracy with the other named Respondents to deliberately not process the paperwork for Petitioner's pre-release referral.  Mr. Shell is a properly named respondent in this matter.  Mr. Shell should be served in the following manner:

> Mr. Clay Shell, Assistant Administrator
> United States Department of Justice
> Federal Bureau of Prisons
> Room 524, HOLC Building
> 320 First Street, N.W.
> Washington, DC 20534.

## D. Respondent Jeff Woodworth:

Mr. Woodworth is employed as the National Witness Security Coordinator of the Central Inmate Monitoring Section of the Federal Bureau of Prisons.  Mr. Woodworth's supervisor is Respondent Shell. Mr. Woodworth personally participated in the conspiracy with the other named Respondents to deliberately not process the paperwork for Petitioner's pre-release referral.  Mr. Woodworth is a properly

named respondent in this matter.  Mr. Woodworth should be served in the following manner:

> Mr. Jeff Woodworth, National Coordinator
> United States Department of Justice
> Federal Bureau of Prisons
> Room 524, HOLC Building
> 320 First Street, N.W.
> Washington, DC 20534.

## E. Respondent Barbara Rickard:

Ms. Rickard is employed as the United Manager of the "Shawnee" Unit at the Federal Correctional Institution located at Marianna, Florida.  Ms. Rickard is Petitioner's unit manager.  Ms. Rickard is the individual who initiated the withholding of Petitioner's pre-release referral paperwork and convinced Respondents Shell and Woodworth to join her in the conspiracy.  Ms. Rickard's deliberate action(s) is(are) based in retaliation against Petitioner for a corruption report Petitioner filed with the Department of Justice. Ms. Rickard is a properly named respondent in this matter.  Ms. Rickard should be served in the following manner:

> Ms. Barbara Rickard, Shawnee Unit Manager
> United States Department of Justice
> Federal Bureau of Prisons
> Federal Correctional Institution
> Post Office Box 8000
> Marianna, FL 32447-8000.

## IV.

## BACKGROUND AND STATEMENT OF THE FACTS

Petitioner is an active participant in the United States

Department of Justice Federal Witness Protection Program ("FWPP"). (See: 18 U.S.C. § 3521 et seq.)  Petitioner's FWPP status has been continuous since June of 1983, and is the direct result of a plea agreement entered into between Petitioner and the United States in the Southern District of Alabama, which also guaranteed Petitioner's cooperation with both the Federal Government and the State of Alabama against the organization and members of the now-defunct United Klans of America, Inc., Knights of the Ku Klux Klan.

Petitioner has been incarcerated in special FWPP facilities since his arrest in 1983.  Now, however, Petitioner is due to be released from custody on or about June 16, 2007.

On January 27, 2006, Petitioner issued a letter waiver to relieve the United States from its FWPP obligation to Petitioner. (Please see: Exhibit - A, infra.)  On April 26, 2006, Petitioner was paroled on the original Life sentence he received in the Southern District of Alabama,  (please see: Exhibit - B, infra), and is currently completing a consecutive 15-month sentence for attempted escape. Ibid.  On July 23, 2006, Petitioner signed his release intentions, indicating that he was voluntarily withdrawing from the FWPP.  (Please see: Exhibit - C, infra.)  Also, on July 23, 2006, Petitioner signed an institutional progress report for the purpose of having his federal parole supervision transferred from the Southern District of Alabama to the Middle District of Alabama.  (Please see: Exhibit - D, infra.)  On September 17, 2006,

- 6 -

Petitioner signed an assumption of risk and further relieved the
Federal Government of any liability to either Petitioner or to
Petitioner's family.  (Please see: Exhibit - E, _infra_.)  Petitioner's
transfer of supervision was finally approved by the Middle District
of Alabama — and on December 23, 2006, Petitioner signed another
institutional progress report (please see: Exhibit - F, _infra_), and
a "Community Based Program Agreement" (please see: Exhibit - G, _infra_),
for the express purpose purpose of Petitioner's CCC placement referral.
(Petitioner was told that he could not have a copy of the referral,
as it remains locked in Respondent Rickard's office.)

On January 3, 2007, Respondent Woodworth informed Petitioner,
via FTS telephone, that Petitioner would not be referred for CCC
placement, because Respondents so-named herein concluded that the
State of Alabama was a danger area for Petitioner.  After some twenty
(20) minutes and a second telephone call less than one (1) hour later,
Mr. Woodworth instructed Petitioner to telephone him again on Tuesday,
January 9, 2007.  Petitioner agreed; and on January 4, 2007, Petitioner
was asked to sign yet a second assumption of risk document.  (Please
see: Exhibit - H, _infra_.)


### V.

### EXHAUSTION OF REMEDIES

The Prison Litigation Reform Act of 1996 ("PLRA"), requires
exhaustion of all available administrative remedies before an

- 7 -

inmate may be allowed to bring an action into court, with only few exceptions, including that such exhaustion would be futile or otherwise serve no purpose to remedy the relative situation.

Petitioner hereby certifies that, although he has initiated his administrative remedy process, exhaustion of the process is futile and serves no purpose to remedy the immediate situation, for two (2) reasons: **1)** the process begins with filing an informal resolution attempt with Respondent Rickard, who is known for holding grievances for months on end and in some cases never bothering to answer them at all; and **2)** following the informal resolution attempt, the next two (2) levels are with the Warden of the institution and the Regional Director in Atlanta, Georgia, neither of whom have the authority to provide the relief here, because Respondents Woodworth and Shell answer only to the Director and Assistant Director of the Federal Bureau of Prisons (Although Mr. Woodworth does himself also answer to Mr. Shell.)  By the time any Central Office appeal is filed with the General Counsel in the Director's Office, Petitioner will have reached the date of his sentence's expiration and pre-release placement as mandated by 18 U.S.C. §3624(c), would become a moot issue — except for the for the constitutional violations that occurred to make it a moot issue in the first place.

Respondent Rickard informed Petitioner, many, many months ago, that Petitioner would be referred for CCC placement in the Middle District of Alabama once Petitioner's transfer of supervision

- 8 -

had been approved to the Middle District of Alabama. Respondent
Woodworth also told Petitioner that he would be referred for CCC
placement in the Middle District of Alabama once the transfer of
supervision had been approved. In fact, Mr. Woodworth worked
diligently to help make the transfer possible. Petitioner has even
been allowed to send most of his personal property to his brother
(Petitioner doesn't even have his address book or his Bible!), and
has been allowed to have release clothes and travel items mailed
to him in preparation for leaving the FWPP facility and going to
a CCC. Petitioner's case manager was even under the impression
that Petitioner's CCC referral would not be hampered, and himself
prepared all of the paperwork for Respondent Rickard's signature
so the Warden would be allowed to sign it and send it to Respondents
Woodworth and Shell for forwarding to the respective CCM in
Montgomery, Alabama.

The point of the last paragraph is to demonstrate that the
Respondents deliberately misled Petitioner — and even his case
manager! — into believing that the CCC referral would not be
interferred with. Respondents deliberately did this, because they
knew that had they told Petitioner and his case manager months ago
that they would refuse to perform their respective duties to ensure
the processing of Petitioner's pre-release referral, then Petitioner
would have had time to properly exhaust his administrative remedies
before this action. Respondents intentionally interferred with
the process in such a manner as to seek to require exhaustion of

the administrative remedy process at such a late date that to exhaust the administrative remedy process would result in Petitioner not being referred for pre-release custody as mandated by §3624(c) — which was their objective all along.

Petitioner therefore claims that, due to the obvious futility and fruitlessness of the Federal Bureau of Prisons' administrative remedy process insofar as this instant matter is concerned, for all intents and purposes Petitioner has no administrative remedy process available to him to rectify the immediate situation.

## VI.

### STATEMENT OF CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### A. The Fifth Amendment:

Petitioner understands and accepts the fact that he has no absolute right to CCC placement.  That is not the issue; rather, the issue here is Petitioner's right to the process of seeking CCC placement and/or other alternative pre-release custody placement.

Title 18 U.S.C. §3624(c), states:

> **(c) Pre-release custody.** The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority

> provided by this subsection may be
> used to place a prisoner in home
> confinement. The United States
> Probation System shall, to the extent
> practicable, offer assistance to a
> prisoner during such pre-release
> custody.

Id.

While Petitioner may not be entitled to CCC placement, he
is entitled to seek  such placement and the Federal Bureau of
Prisons is statutorily duty-bound, based on the mandatory language
of 18 U.S.C. § 3624(c), to place Petitioner in some kind of pre-release
conditions that will afford him a reasonable opportunity to adjust
to re-entry into society.  (See: Elwood v. Jeter, 386 F.3d 842,
847 (8th. Cir. 2004); Serafini v. Dodrill, 325 F.Supp.2d 535, 539
(M.D.Pa. 2004).)

Without doubt, Petitioner is entitled to be considered for
some type of pre-release custody; **however**, that consideration and
final disposition is not within the authority of those Respondents
so-named herein — Respondents here have a ministerial duty to
calculate Petitioner's time, fill out the referral, then forward
the referral to the respective Community Corrections Manager for
final disposition.  The Community Corrections Manager is the sole
individual who reviews cases and makes decisions as to pre-release
custody placement.  (See: Federal Bureau of Prisons' Program
Statement 7310.04, Part 7(b) Community Corrections Programs, at

page 5.[1])   Respondents here are presuming authority which they do not possess — and in being so presumptuous Respondents are deliberately violating Petitioner's constitutional due process rights.

## B. Staff Retaliation:

Petitioner hereby claims a federal civil rights violation under color of law concerning Respondent Rickard.

In early 2004 this Petitioner filed a confidential twenty-two (22) page report on corruption in the facility where he is now housed.   The report was sent to Mr. Barry Kowalski of the Department of Justice's Civil Rights Division, Criminal Section.[2]   The report was sent via priority legal mail from Petitioner to the Southern Poverty Law Center for forwarding to Mr. Kowalski, who was expecting the report after an earlier telephone conversation with Petitioner. Respondent Rickard intercepted Petitioner's legal mail, opened the envelope and copied the report, then stapled the edge of the envelope and dropped it in the mail.   The envelope was left untouched and placed inside a plastic bag at the Southern Poverty Law Center, then forwarded to Mr. Kowalski at the Department of Justice.   Mr. Kowalski then forwarded the envelope to the Chief of the Office of Public Integrity.   Apparently, Bureau of Prisons headquarters managed to

---

1. Petitioner has read the policy cite, but is unable to secure a copy of this particular Federal Bureau of Prisons' Program Statement.

2. Mr. Kowalski is Petitioner's FWPP sponsor.

get a copy of the report and then turned it over to investigative staff at Petitioner's facility — the very investigative staff the report named corrupt.[3]

Petitioner believes Respondent Rickard is retaliating against Petitioner for having filed the corruption report.[4] This belief is based on the facts that: **1)** Ms. Rickard issued a warning about people "throwing rocks" in a speech she gave at a recent institution graduation ceremony, saying the thrown rocks would come back and hit people in the head as bricks[5]; **2)** Ms. Rickard assured Petitioner that she would sign the CCC referral; **3)** Ms. Rickard allowed Petitioner's release clothing and travel bag to be sent in to take to the CCC (halfway house); and **4)** Ms. Rickard then deliberately held the referral paperwork once Petitioner's case manager had completed everything and readied it for signatures.

If Ms. Rickard's actions are retaliatorily-based, then she is also criminally violative pf Petitioner's federal civil right (see: 18 U.S.C. §242, Civil Rights Violation Under Color of Law), as well whistle-blower protection statutes.

---

3. Petitioner contacted Mr. Kowalski and asked to have the report withdrawn, because he believed Ms. Rickard had changed, and she had agreed to "bury the hatchet" with Petitioner. Apparently, she hoodwinked Petitioner.

4. The report addressed the possibility of a drug smuggling and stolen car ring. This possibility later turned out to be a fact and authorities made multi-state arrests and closed down a multi-million-dollar drug smuggling and stolen car ring being operated in the FWPP facility ran by Ms. Rickard.

5. Ms. Rickard was recently ordered moved from the Shawnee Unit at Marianna, Florida, and relocated to the federal institution at Pensacola, Florida.

## C. Discrimination:

In 2006 an inmate known as "C.B." withdrew from FWPP participation and voluntarily transferred to a non-FWPP general inmate population setting. C.B. did this for the express purpose of seeking halfway house placement. After C.B. went to general population, Mr. Shell informed all FWPP Unit Managers that FWPP inmates did not have to go to general population in order to seek halfway placement; but would be afforded the same opportunities as non-FWPP inmates.[6] This, of course was contingent upon the inmate's non-participation in the FWPP after release.[7] Later, in 2006, another inmate, "G.R.", requested CCC placement. G.R. remained in the same facility as Petitioner, and was approved for and received CCC placement. In fact, G.R.'s situation was almost exactly the same as this Petitioner's: G.R. gave testimony in one district of the state; requested to have his federal supervision moved to a different district in the same state; then requested CCC placement in the district to where his federal supervision had been moved. Yes, G.R.'s supervision was moved. And yes, the very same Respondents so-named herein signed G.R.'s referral and forwarded it to the respective Community Corrections Manager who accepted G.R. for CCC placement.

Petitioner here claims that he is being discriminated against by the Respondents so-named herein, in that he is being treated

---

6. In actuality, this has always been the case. The only thing is that Respondents have been telling people that FWPP cases are not eligible for pre-release custody. C.B. simply "called their bluff", as it were.

7. Again, this has always been the case for individuals who decided not to seek Post-release Services of the FWPP upon release from custody. Respondents have simply been lying to people who would believe them over the years.

differently from others similarly situated to Petitioner (e.g. G.R.), and that he is being treated differently from non-FWPP general population inmates.  Petitioner should be afforded the very same opportunities for pre-release custody as general population inmates, because Petitioner has voluntarily withdrawn from the FWPP upon his release from custody.

Petitioner's right to be treated equally alongside others who are similarly situated to Petitioner has been and continues to be violated by the Respondents so-named herein.

## VII.

### CONCLUSION

Your Honor, I am a layperson, to be sure, and I would never presume either knowledge or expertise of those who practice in the legal arena.  But the fact is that I do know right from wrong; and I do know when I am being targeted.

From the beginning, when I stepped forward and accepted responsibility for what I had been involved in, I also accepted the fact that I put myself in this situation — and that any pain my family and I suffered would be my own fault.  And be that as it may, that fact does not excuse the constitutionally (and possibly criminally) violative acts of others around me.  I know people who have been imprisoned for committing acts very similar to those committed daily by individuals charged with the daily operations of facilities used for the specific purpose of housing FWPP inmates.

My mother has been inside the intensive care unit at the Southeast Alabama Medical Center at Dothan, Alabama, for two (2) weeks running.  The Respondents here know this; and they know the whole reason for me withdrawing from the FWPP is to see my family. Pre-release custody would afford me the opportunity not only to adjust to re-entry into society (I've never sent an e-mail or used a cell phone), but, more importantly, to see my ailing mother.

Your Honor, I've been to the Playground, and I have stood my Square in Silence for nearly twenty-four (24) years; but I am now in a State of Distress.  The Respondents here are wrong — plain and simple.  **They** have not gone into the Funhouse; because, if they had, then they would understand just how dishonorable their actions are in this situation.

This Petitioner hereby respectfully asks the Court to accept this emergency petition and act in the interests of justice, and, Hosannah, in the name of the Blessed King, grant the following relief:

> 1 - Order Respondents to forward, forthwith, Petitioner's CCC referral to the Community Corrections Manager for the Middle District of Alabama, located in Montgomery, Alabama;
>
> 2 - Issue a restraining order prohibiting any of the Respondents from suggesting any adverse course of action to the Community Corrections Manager in this case, or seeking to otherwise cause the Community Corrections Manager to act in any adverse manner towards this Petitioner; and

3 - Issue an Order directing that all
    mail received by Petitioner from
    the United States District Court
    for the Middle District of Alabama
    be treated as "legal mail" proper,
    for without such an Order any such
    mail is subject to be opened and
    read by staff before delivery to
    Petitioner.

Respectfully submitted and requested this _10th_ day of

_January_____, 2007.


By: _James L. Knowles, Jr._____
    James L. Knowles, Jr., pro se
    Petitioner
    Post Office Box 8000
    Marianna, FL 32447-8000

    Tel.: None

**P E T I T I O N E R ' S     E X H I B I T S**

**A**

**THRU**

**H**

James L. Knowles, Jr.
c/o Mr. Jeff Woodward
Central Inmate Monitoring Section,
Federal Bureau of Prisons
Room 524, HOLC Building
320 First Street, N.W.
Washington, DC 20534

January 27, 2006cey

Mr. Barry F. Kowalski, Special Prosecutor
Civil Rights Division, Criminal Section
United States Department of Justice
950 Pennsylvania Avenue
Washington, DC  20530

Re: Waiver of witness security clause of plea agreement dated June 16, 1983

Dear Mr. Kowalski:

Please consider this communique a formal waiver of the specific clause
in the above-referenced agreement which guarantees my placement in the Federal
Witness Protection Program.  This waiver is intended to become effective upon
my release from custody, and is not intended to waive my WITSEC status for the
remainder of my incarceration.

I have decided that, upon my release from custody, I do not wish to continue
my participation within the Federal Witness Protection Program; rather, I will
be returning to Alabama at that time.  I therefore hereby relieve the United
States and all of its employees, agents and representatives, from any and all
obligations as may be perceived within the above-referenced agreement to provide
continued witness security protection for me upon my release from custody, effective
only upon my release from custody.  This waiver is not in any manner intended
to supercede the settlement agreement agreement, as stipulated, in the case
of Knowles v. Thornburgh, from the District of Minnesota.

Thank you for everything you have done over the years.  If you have any
questions or concerns concerning this communique, then please do not hesitate
to let me know at your earliest convenience.

With all of my very best regards, I remain,

very truly yours,

James L. Knowles, Jr.

c: Ms. Ginger Curran, Case Analyst, Office of Enforcement Operations
   Mr. Jeff Woodward, Nat'l Coordinator, Central Office, Federal Bureau of Prisons
   Unit Team
   Personal redundancy file

PETITIONER'S EXHIBIT – A

**U.S. Department of Justice**
**United States Parole Commission**

### CERTIFICATE OF PAROLE
### (to 15 month Consecutive Sentence)

Having determined that (1) **Knowles, James**, Register No. **73206-011**, (the "inmate") is eligible for parole; (2) the inmate has substantially observed institutional rules; and (3) the inmate's release would not depreciate the seriousness of the offense, promote disrespect for the law, or jeopardize the public welfare, the United States Parole Commission (the "Commission") ORDERS that the inmate be paroled on **May 16, 2006**, and remain under parole supervision through **Life**. The conditions listed in this certificate apply during the inmate's parole supervision.

Given under the hand and the seal of the Commission on April 26, 2006.

UNITED STATES PAROLE COMMISSION

By: Lynne E. Jenkins, Case Analyst

Initial Risk Category: SFS - **7**
Chief U.S. Probation Officer:

### ACKNOWLEDGMENT OF CONDITIONS

I have read, or had read to me, the conditions that are listed on this CERTIFICATE OF PAROLE. I have received a copy of this CERTIFICATE OF PAROLE. I fully understand the conditions that have been imposed upon me and know that if I violate any of those conditions I may be sent back to prison.

### CONSENT TO DISCLOSURE OF DRUG/ALCOHOL TREATMENT INFORMATION

By signing this CERTIFICATE OF PAROLE, I consent to unrestricted communication between any facility administering a drug or alcohol treatment program in which I am or will be participating, on the one hand, and the Commission and the office responsible for supervising me, on the other hand. I consent to disclosure by such facility to the Commission and the office responsible for supervising me of any information requested related to my supervision, and the disclosure by the Commission and the office supervising me to any agency that requires such information for the performance of an official duty. This consent is irrevocable until the end of parole supervision.

James Knowles                        # 73206-011
_____      _____
Name                                  Reg. No.

Witness: Scott, witness Security Coordinator 5/16/06
_____      _____
Name and Title                        Date

The above-named person was released on the _16_ day of _May_, 20_06_ with a total of _N/A_ days remaining to be served.
_Life_

Jeffy Woodward National Case Coordinator
_____
Official Certifying Release

▬   **PETITIONER'S EXHIBIT – B**   ▬

This CERTIFICATE OF PAROLE becomes effective on the day of release set forth above, after you sign this certificate. If you fail to comply with any of the conditions, you may be summoned to a hearing, or retaken on a warrant and reimprisoned pending a hearing, to determine if your parole should be revoked.

## GENERAL CONDITIONS

1. A. You must go directly to the approved district of supervision and contact the United States Probation Office designated to supervise you. If you are unable to appear in person at that office within three days of your release, you must report to the United States Probation Office nearest to you and follow the instructions of the duty officer.
   B. **If you are not released to the community after your parole, you must follow the instructions in 1.A. above when you are released to the community.**
2. You must not leave the geographic limits of the approved district of supervision without written permission from your Probation Officer. For the purpose of applying all conditions of release, "your Probation Officer" includes any Probation Officer assisting, substituting for, or acting on behalf of the officer assigned to your supervision.
3. You must, between the first and third day of each month, make a written report to your Probation Officer. In addition, you must meet with your Probation Officer at such other times and in such a manner as that Officer directs, and provide such information as that Officer requests. All information that you provide to your Probation Officer must be complete and truthful.
4. You must notify your Probation Officer within two days of (A) an arrest or questioning by a law enforcement officer, (B) a change in your residence, or (C) a change in your employment.
5. You must permit your Probation Officer to visit your place of residence and your place of business or employment.
6. You must permit your Probation Officer to confiscate any material that Officer believes may be contraband and that is in plain view in your possession, including in your residence, place of business or employment, or vehicle.
7. You must submit to a drug or alcohol test whenever ordered to do so by your Probation Officer.
8. You must not violate any law and must not associate with someone else who is violating any law.
9. You must not possess a dangerous weapon, which includes ammunition.
10. You must not drink alcohol to excess and must not illegally use or possess a controlled substance. You must not frequent a place where you know a controlled substance is illegally used or distributed.
11. You must not associate with a person who has a criminal record without permission from your Probation Officer.
12. You must not enter into an agreement to act as an informant or undercover agent for a law-enforcement agency without permission from the Commission.
13. You must make a diligent effort to work regularly, unless excused by your Probation Officer, and to support any legal dependent.
14. You must make a diligent effort to satisfy any fine, restitution order, court costs or assessment, child-support or alimony payment, or any other court-ordered financial obligation to which you are subject. You must provide financial information relevant to the payment of such a financial obligation that is requested by your Probation Officer. If you are unable to pay such a financial obligation in one sum, you must cooperate with your Probation Officer to establish an installment-payment schedule.
15. If you are being paroled from a sentence imposed following conviction of a crime of domestic violence, and that conviction is your first conviction for such a crime, you must, as directed by your Probation Officer, attend an approved offender-rehabilitation program if such a program is readily available within a 50-mile radius of your residence.
16. If you are required by law to report and register as a sex-offender, you must comply with that law.
17. You must provide a DNA sample if your Probation Officer determines that collection of such sample is required by law.
18. You must participate in an Employment Readiness Program if so directed by your Probation Officer.
19. If so directed by your Probation Officer, you must notify a person of your criminal history or characteristics to inform that person of a risk of harm.

## SPECIAL CONDITIONS

**None imposed**

## RELEASE INTENTIONS FOR WITNESS SECURITY CASE

**Name**: KNOWLES, James Llewellyn Jr. **Reg. No.**:73206-011  **Release Date/Method**: 6-17-2007/Good Conduct Time Release

1. _____ (Initials) I request to be considered for post-release services of the Witness Security Program (Program).  In requesting consideration, I understand that I am required to develop an alternate release plan, since my authorization for post-release services is not guaranteed.  Additionally, in order to be considered for post-release services, I must submit to a polygraph examination before my release, which is for the sole purpose of determining whether I have had unauthorized contact with other Program witnesses, or have arranged to have future contact with other Program witnesses.

2. _JK_ (Initials) I do not request to be considered for post-release services.

3._____ (Initials) I have been advised that I have been denied post release services by OEO.

Even though I am not requesting, or have been advised that I have been denied post-release services:

_____(Initials) I am willing to voluntarly submit to a polygraph examination for the sole purpose of determining whether I have had unauthorized contact with other Program witnesses or have arranged to have future contact with other Program witnesses.

_JK_(Initials) I am not willing to submit to a polygraph examination for the purpose listed above.

## ALTERNATE RELEASE PLAN (MUST BE COMPLETED)

Name and Relationship: Cecil E. Cochran Jr., brother

Address, City, State, Zip Code: 906 Highland Avenue, Geneva, Alabama 36340

Telephone Number:     334-684-6799

Employment:    Food service industry

Prisoner's Full Name (Printed): _James L. Knowles Jr._

Prisoner's Full Name (Signature): _James L. Knowles Jr._ Date: _July 23, 2006_

BOP Staff Witness's Signature: _____ Date: _____

➡ **PETITIONER'S EXHIBIT – C** ⬅

BP-S187.058  **PROGRESS REPORT** CDFRM
FEB 94

**U. S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| **Date** |
| --- |
| July 23, 2006 |

Inmate Reviewed

| **Inmate's Signature** | **Date** |
| --- | --- |
| *James L. Knowles, Jr* | July 23, 2006 |

**1. Type of Progress Report**

☐ Initial          ☐ Statutory Interim          X  Pre-Release

☐ Transfer       ☐ Triennial          ☐ Other (Specify) _____

| **2. Inmate's Name** | **3. Register Number** | **4. Age (DOB)** |
| --- | --- | --- |
| KNOWLES, James Llewellyn Jr. | 73206-011 | (42) 09-12-1963 |

**5. Present Security/Custody Level**

High/In

**6. Offense/Violator Offense**
18:241 - Conspire Against the Rights of a U.S. Citizen
18:751(a) - Escape

**7. Sentence**
18:241 - Life
18:751(a) - 15 month term consecutive to Life term

| **8. Sentence Began** | **9. Months Served + Jail Credit** | **10. Days GCT/ or EGT/SGT** |
| --- | --- | --- |
| 04-11-1985 | 255 months + 665 days | 518 EGT    0 GCT |

| **11. Days FSGT/WSGT/DGCT** | **12. Projected Release**<br>05-16-2006, via Presumptive Parole<br>06-17-2007, via Good Conduct Time | **13. Last USPC Action** |
| --- | --- | --- |
| 0/0/0 | | NOA - 01-17-2006 - No change in Presumptive Parole date |

**14. Detainer/Pending Charges**

N/A

**15. Co-defendants**

N/A

Record Copy - Inmate File; copy - U.S. Probation Office; copy - Parole Commission Re
(This form may be replicated via WP)                    Replac■    **PETITIONER'S EXHIBIT – D**

| Inmate's Name: KNOWLES, James Llewellyn Jr. | Register No.: 73206-011 | Date: 07-23-2006 |
|---|---|---|

**16. Institutional Adjustment:** He has made an excellent adjustment to his incarceration at this facility. His relationship with supervisors and co-workers, peers, attitude, punctuality, willingness to accept and complete assignments, and willingness to accept supervision are all rated as excellent.

**A. Program Plan:** Mr. Knowles initially met with his Unit Team at his previous institution on November 15, 1996. The Unit Team recommend he participate in correspondence courses and develop Adult Continuing Education "ACE" classes for the inmate population. At subsequent program reviews, the Unit Team recommended he participate in the college program, unit counseling groups, hobby crafts, the Inmate Financial Responsibility Program, and instruct "ACE" classes. Mr. Knowles' most recent program review at this facility was held on September 9, 2005. The Unit Team recommended he save money for release, facilitate several inmate classes and complete all requirements for the Release Preparation Program.

**B. Work Assignments:** Mr. Knowles is currently assigned to the Unicor Automated Data Processing Factory. He receives much better than average ratings and Grade 1 pay. He is responsible for quality control. This entails scanning for keying errors and making necessary corrections. He was previously assigned to the Food Service work detail. He was the Grade 1 Senior Cook and was responsible for providing instruction to new cooks and bakers. His supervisor indicated he was an outstanding worker who followed instructions, and got along well with everyone. He was well behaved, carried himself in a very good manner and was able to control his attitudes in all areas. His previous Food Service supervisors describe him as being very knowledgeable of Food Service organization and applications. He has continually been given credit by his supervisors for the quality of food served. It should also be noted that he assists in the preparation of numerous special meals and desserts for the holidays and special unit occasions. Other work details for Mr. Knowles include Unit Orderly, Law Clerk, Prison Industries "Glove Factory-Quality Control".

**C. Education/Vocational Participation:** Mr. Knowles is English proficient and obtained his General Equivalency Diploma in 1983. He has also completed the classes listed below:

| DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|
| REAL ESTATE | 01-07-2002 | 02-18-2002 | P | C | P | 20 |
| PHILOSOPHICAL ANTHROPOLOGY | 05-03-2001 | 06-21-2001 | P | C | P | 11 |
| BEG SPANISH ACE CLASS | 10-28-1999 | 01-27-2000 | P | C | P | 25 |
| ACE COMMUNICATIONS SKILLS | 07-22-1999 | 11-08-1999 | P | C | P | 25 |
| LEGAL RESEARCH CLASS | 11-07-1997 | 04-06-1998 | P | C | P | 20 |
| FRENCH ACE CLASS | 08-05-1997 | 09-23-1997 | P | C | P | 25 |

In addition, Mr. Knowles taught the 30 hour Understanding the Basics of Culinary Arts course ending May 2002 and taught the 12 hour Understanding the Basics of Baking course ending July 20002.

Previous records indicate Mr. Knowles has instructed the Philosophical Anthropology class, the ACE Communication Skills class, the Legal Research class, and the Basic Yoga class. He has completed six computer courses totaling 530 hours; three courses in Sociology with a 3.9 GPA; a Food and Beverage Management course with a 4.0 GPA; and Latin 101 with a 3.5 GPA. He has completed several CLEP exams to include Business Law in which he ranked in the 92 percentile. In addition, he is a member of the American Culinary Federation Membership, the International Association of Cooking Professionals, and is a recognized American Culinary Federation Sous Chef.

| Inmate's Name: KNOWLES, James Llewellyn Jr. | Register No.: 73206-011 | Date: 07-23-2006 |

**D. Correctional Counseling Programs:** Previous records indicate Mr. Knowles completed 10 hours of Self-Image, and 8 hours of Breaking Barriers counseling programs.

**E. Incident Reports:** Mr. Knowles has maintained clear conduct since July 20, 1988. He has received the following incident reports:

| Date | Code/Offense | Disposition |
|------|-------------|-------------|
| 07-20-88 | 102A/Escape | DHO-60 days DS; FF 610 days SGT; DMGT for June 1988; disciplinary transfer |
| 01-28-87 | 406/Unauthorized Use of Telephone | UDC-60 days lose phone; lose preferred housing |
| 12-29-86 | 406/Unauthorized Use of Telephone | IDC-30 days lose phone; lose preferred housing |
| 09-13-85 | 322/Possession of Intoxicants | IDC-15 days DS; job change |

**F. Institutional Movement:** N/A.

**G. Physical and Mental Health:** Mr. Knowles is assigned regular duty with no medical restrictions. Mr. Knowles is considered fully employable upon his release from federal custody.

**H. Financial Responsibility Program:** Mr. Knowles has satisfied all financial obligations.

**17. Release Plans:** Mr. Knowles is requesting relocation from the Southern District of Alabama to the Middle District of Alabama.

| | |
|---|---|
| Residence: | Cecil E. Cochran, Jr., brother<br>906 Highland Avenue<br>Geneva, Alabama 36340<br>Phone Number: (334) 684-6799 |
| Employment: | food service industry |
| Sentencing USPO: | Kenneth G. Coale, Chief<br>United States Probation Office<br>Southern District of Alabama<br>United States District Court<br>Post Office Box 2985<br>Mobile, AL 36652 |
| Relocation USPO: | Robert P. Longshore, Chief<br>United States Probation Office<br>Middle District of Alabama<br>P.O. Box 39<br>Montgomery, AL 36101-0039 |

**J. RELEASE NOTIFICATIONS:**
Offender is subject to notification under 18 USC 4042 (b), the Violent Crime Control and Law Enforcement Act of 1994, due to his current conviction for a crime of violence.

**D. Release Preparation Program:** Mr. Knowles has completed the inmate Release Preparation Program.

## ASSUMPTION OF RISK

I, James Knowles, whose signature appears below, having been fully advised by the Federal Bureau of Prisons, Inmate Monitoring Section, Washington, D.C., attest to the following:

1) It is my own decision and choice to return to the Middle District of Alabama upon my release from custody. I further understand that the Middle District of Alabama area may be a danger area to me.

2) I have been advised by Inmate Monitoring and I understand that the travel and relocation described here may subject me and my family to danger.

3) I have been further advised by Inmate Monitoring that neither the United States, or any officer or agency thereof has the responsibility or authority to provide security for me, my family, or my property.

4) I agree and assume for me and my family all risk of injury, damage, or loss that may result from my actions, and to save and hold harmless the United States, and any agency thereof, from all claims and suits growing out of such injury, damage, or loss.

DATE: September 17, 2006

Signed

Doug Thompson, Case Manager
Witnessed by/Title

PETITIONER'S EXHIBIT - E

BP-S187.058  **PROGRESS REPORT** CDFRM
FEB 94

**U. S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| | **Date** |
|---|---|
| | December 23, 2006 |

Inmate Reviewed

| **Inmate's Signature** | **Date** |
|---|---|
| *James L. Knowles Jr.* | 12/23/2006 |

**1. Type of Progress Report**

☐ Initial          ☐ Statutory Interim          X  Pre-Release

☐ Transfer         ☐ Triennial                  ☐ Other (Specify) _____

| **2. Inmate's Name** | **3. Register Number** | **4. Age (DOB)** |
|---|---|---|
| KNOWLES, James Lewellyn Jr. | 73206-011 | (43) 09-12-1963 |

**5. Present Security/Custody Level**

High/In

**6. Offense/Violator Offense**
18:241 - Conspire Against the Rights of a U.S. Citizen
18:751(a) - Escape

**7. Sentence**
18:241 - Life
18:751(a) - 15 month term consecutive to Life term

| **8. Sentence Began** | **9. Months Served + Jail Credit** | **10. Days GCT/ or EGT/SGT** |
|---|---|---|
| 04-11-1985 | 260 months + 665 days | 518 EGT   0 GCT |

| **11. Days FSGT/WSGT/DGCT** | **12. Projected Release** 05-16-2006, via Presumptive Parole 06-15-2007, + 2 days public law via Good Conduct Time | **13. Last USPC Action** |
|---|---|---|
| 0/0/0 | | NOA - 01-17-2006 - No change in Presumptive Parole date |

**14. Detainer/Pending Charges**

N/A

**15. Co-defendants**

N/A

Record Copy - Inmate File; copy - U.S. Probation Office; copy - Parole Commission Regional Office (If applicable): copy - Inmate
(This form may be replicated via WP)                              Replaces

**PETITIONER'S EXHIBIT – F**

FEDERAL BUREAU OF PRISONS
U. S. DEPARTMENT OF JUSTICE

Progress Report - Page 2

| Inmate's Name: KNOWLES, James Llewellyn Jr. | Register No.: 73206-011 | Date: 12-23-2006 |
|---|---|---|

**16. Institutional Adjustment:** He has made an excellent adjustment to his incarceration at this facility. His relationship with supervisors and co-workers, peers, attitude, punctuality, willingness to accept and complete assignments, and willingness to accept supervision are all rated as excellent.

**A. Program Plan:** Mr. Knowles initially met with his Unit Team at his previous institution on November 15, 1996. The Unit Team recommend he participate in correspondence courses and develop Adult Continuing Education "ACE" classes for the inmate population. At subsequent program reviews, the Unit Team recommended he participate in the college program, unit counseling groups, hobby crafts, the Inmate Financial Responsibility Program, and instruct "ACE" classes. Mr. Knowles' most recent program review at this facility was held on September 9, 2005. The Unit Team recommended he save money for release, facilitate several inmate classes and complete all requirements for the Release Preparation Program.

**B. Work Assignments:** Mr. Knowles is currently assigned to the Unicor Automated Data Processing Factory. He receives much better than average ratings and Grade 1 pay. He is responsible for quality control. This entails scanning for keying errors and making necessary corrections. He was previously assigned to the Food Service work detail. He was the Grade 1 Senior Cook and was responsible for providing instruction to new cooks and bakers. His supervisor indicated he was an outstanding worker who followed instructions, and got along well with everyone. He was well behaved, carried himself in a very good manner and was able to control his attitudes in all areas. His previous Food Service supervisors describe him as being very knowledgeable of Food Service organization and applications. He has continually been given credit by his supervisors for the quality of food served. It should also be noted that he assists in the preparation of numerous special meals and desserts for the holidays and special unit occasions. Other work details for Mr. Knowles include Unit Orderly, Law Clerk, Prison Industries "Glove Factory-Quality Control".

**C. Education/Vocational Participation:** Mr. Knowles is English proficient and obtained his General Equivalency Diploma in 1983. He has also completed the classes listed below:

| DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|
| REAL ESTATE | 01-07-2002 | 02-18-2002 | P | C | P | 20 |
| PHILOSOPHICAL ANTHROPOLOGY | 05-03-2001 | 06-21-2001 | P | C | P | 11 |
| BEG SPANISH ACE CLASS | 10-28-1999 | 01-27-2000 | P | C | P | 25 |
| ACE COMMUNICATIONS SKILLS | 07-22-1999 | 11-08-1999 | P | C | P | 25 |
| LEGAL RESEARCH CLASS | 11-07-1997 | 04-06-1998 | P | C | P | 20 |
| FRENCH ACE CLASS | 08-05-1997 | 09-23-1997 | P | C | P | 25 |

In addition, Mr. Knowles taught the 30 hour Understanding the Basics of Culinary Arts course ending May 2002 and taught the 12 hour Understanding the Basics of Baking course ending July 20002.

Previous records indicate Mr. Knowles has instructed the Philosophical Anthropology class, the ACE Communication Skills class, the Legal Research class, and the Basic Yoga class. He has completed six computer courses totaling 530 hours; three courses in Sociology with a 3.9 GPA; a Food and Beverage Management course with a 4.0 GPA; and Latin 101 with a 3.5 GPA. He has completed several CLEP exams to include Business Law in which he ranked in the 92 percentile. In addition, he is a member of the American Culinary Federation Membership, the International Association of Cooking Professionals, and is a recognized American Culinary Federation Sous Chef.

Case 2:07-cv-00037-MEF-CSC    Document 1-7    Filed 01/10/2007    Page 3 of 3

| Inmate's Name: KNOWLES, James Llewellyn Jr. | Register No.: 73206-011 | Date: 12-23-2006 |
|---|---|---|

**D. Correctional Counseling Programs:** Previous records indicate Mr. Knowles completed 10 hours of Self-Image, and 8 hours of Breaking Barriers counseling programs.

**E. Incident Reports:** Mr. Knowles has maintained clear conduct since July 20, 1988. He has received the following incident reports:

| Date | Code/Offense | Disposition |
|---|---|---|
| 07-20-88 | 102A/Escape | DHO-60 days DS; FF 610 days SGT; DMGT for June 1988; disciplinary transfer |
| 01-28-87 | 406/Unauthorized Use of Telephone | UDC-60 days lose phone; lose preferred housing |
| 12-29-86 | 406/Unauthorized Use of Telephone | IDC-30 days lose phone; lose preferred housing |
| 09-13-85 | 322/Possession of Intoxicants | IDC-15 days DS; job change |

**F. Institutional Movement:** N/A.

**G. Physical and Mental Health:** Mr. Knowles is assigned regular duty with no medical restrictions. Mr. Knowles is considered fully employable upon his release from federal custody.

**H. Financial Responsibility Program:** Mr. Knowles has satisfied all financial obligations.

**17. Release Plans:** Mr. Knowles has been approved for relocation from the Southern District of Alabama to the Middle District of Alabama.

Residence:     Terri & Steven Whatley
313A Riverside Drive
Geneva, Alabama 36340
Phone Number: (334) 449-8042

Employment:   food service industry

Sentencing USPO:     Kenneth G. Coale, Chief
United States Probation Office
Southern District of Alabama
United States District Court
Post Office Box 2985
Mobile, AL 36652

Relocation USPO:     Leslie Prim Hopek, Chief
United States Probation Office
Middle District of Alabama
Federal Courthouse Complex
One Church Street
Montgomery, AL 36104

J.    RELEASE NOTIFICATIONS:
Offender is subject to notification under 18 USC 4042 (b), the Violent Crime Control and Law Enforcement Act of 1994, due to his current conviction for a crime of violence.

**D. Release Preparation Program:** Mr. Knowles has completed the inmate Release Preparation Program.

BP-S434.073 **COMMUNITY BASED PROGRAM AGREEMENT** CDFRM   NOV 95
**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

I, James Lewellyn Knowles, Jr. _____, Register Number 73206-011 _____, hereby authorize employees of the Department of Justice and employees of any facility contracting with the Department of Justice to release any or all of the contents of information in my inmate central file to educational facilities, social agencies, prospective employees, etc., for the purpose of assisting in all phases of community programming and release planning. I also authorize the above persons to advise prospective employers that I am currently in the custody of the U. S. Attorney General serving sentence or under the supervision of the U.S. Parole Commission or U.S. Probation Office. This consent will remain in effect until my release from supervision or until revoked in writing by me. Revocation of this authorization may result in my removal from a community-based correctional program.

I understand that while a resident of a community corrections center or work release program I will be expected to contribute to the cost of my residence through payments to the contractor and I agree to make such payments. I understand that failure to make payments may result in my removal from a community-based program (Not applicable for MINT referrals).

I understand that urinalysis or other Bureau of Prisons authorized testing to detect unauthorized drug or alcohol use may be required as a condition of residence in a community corrections center or work release program, and if required, I agree to submit to such testing. I understand that ingestion of poppy seed products may result in positive test results for unauthorized drug use and is therefore prohibited.

I understand that I am expected to assume financial responsibility for my health care while a resident of a community-based correctional program. Should I be unable or unwilling to bear the cost of necessary medical care I understand that I may be transferred to a suitable institution or facility, at the Governments option, to receive such care. I understand that no medical care may be provided to me at Government expense without prior authorization of the Bureau of Prisons.

I understand that I may be required to cooperate with a substance abuse assessment and participate in any treatment recommended as a result of the assessment.

I understand that I may be required to abide by the conditions of supervision as imposed by the sentencing court or the U.S. Parole Commission, including the payments of fines and restitution and to follow the instructions of the probation officer as if on supervision.

I understand that upon arrival at the community corrections center I may be initially placed in the restrictive Community Corrections Component for a period of orientation. In this component, I will be expected to remain at the CCC unless authorized to leave for employment or other authorized program purposes. Additionally, I understand that social visits and recreational/leisure activities will be confined to the CCC.

I understand that while a resident of a community corrections center or work release program I will be required to abide by the rules and regulations promulgated by such program.

For MINT referrals, I understand that I am expected to assume financial responsibility for my child's care, medical and subsistence, while I am a resident of a CCC. Should I or the foster care provider be unable or unwilling to bear my child's financial cost, I understand that I may be transferred back to my parent institution. I understand that no financial support will be provided to my child by the Bureau of Prisons.

## PART II

In the event that I am approved for home confinement, I agree to abide by the following conditions related to my legal participation in home confinement.

I understand that my participation in home confinement will be an alternative to placement in a CCC for no more than the last six months or 10% of my sentence, whichever is less. I am aware that I will legally remain in the custody of the Bureau of Prisons and/or the U.S. Attorney General and that failure to remain at the required locations may result in disciplinary action and/or prosecution for escape.

I agree to report to my assigned probation officer or the contractor's facility immediately upon reaching my release destination.

I understand that if I decline to participate in the recommended home confinement program I may face administrative reassignment out of the community corrections program.

I agree that during the home confinement period, I will remain at my place of residence, except for employment, unless I am given permission to do otherwise. I also understand that I will be required to pay the costs of the program based on my ability to pay.

I also agree to maintain a telephone at my place of residence without "call forwarding," a modem, "Caller ID" or portable cordless telephones for this period. I also agree that if my confinement is to be electronically monitored, I will wear any electronic monitoring device required, follow procedures specified and not have "call forwarding" on my telephone.

| Inmate's Printed Name and Signature | Date |
|---|---|
| KNOWLES, James Lewellyn Jr. | 12/23/2006 |
| Witness' Printed Name and Signature | Date |

---

Record copy - CCM; Copy - CCM; Copy - Central File   This form may be replicated via WP-Replaces BP-S434.073 dtd Apr 93

**PETITIONER'S EXHIBIT – G**

# ASSUMPTION OF RISK

I, **James Knowles, Reg. No. 73206-011,** whose signature appears below, having been fully advised by the Federal Bureau of Prisons, Inmate Monitoring Section, Washington, D.C., attest to the following:

1.    It is my own decision and choice to return to the State of Alabama upon my release from custody, which I understand may be a danger area to me.

2.    I have been advised by Inmate Monitoring and I understand that the travel and relocation described here may subject me and my family to danger.

3.    I have been further advised by Inmate Monitoring that neither the United States, or any officer or agency thereof has the responsibility or authority to provide security for me, my family, or my property.

4.    I agree and assume for me and my family all risk of injury, damage, or loss that may result from my actions, and to save and hold harmless the United States, and any agency thereof, from all claims and suits growing out of such injury, damage, or loss.

DATE: _January 04, 2007_

_Signed_

**Witnessed by/Title**